# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| ERIC EDWARDS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 19-00126-CV-W-BP ) |
| PAR ELECTRICAL CONTRACTORS, INC., and INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL NO. 53, | ) ) ) ) ) |
| Defendants. | ) |

## ORDER AND OPINION GRANTING DEFENDANT LOCAL 53'S MOTION TO DISMISS

Plaintiff Eric Edwards ("Edwards") filed this suit for race discrimination, retaliation, and hostile work environment against his former employer, PAR Electrical Contractors, Inc. ("PAR") and his labor organization, International Brotherhood of Electrical Workers, Local No. 53 ("Local 53"). Now pending is Local 53's Motion to Dismiss (Doc. 11), which argues that Edwards failed to allege facts sufficient to state any cause of action against Local 53. As explained below, the motion is GRANTED.

## I. BACKGROUND

The First Amended Complaint ("Amended Complaint") alleges the following facts, all of which are construed in the light most favorable to Edwards and deemed as true for purposes of this Order.[1] PAR is headquartered in Kansas City and is a nationwide electrical contractor that specializes in outside electrical work. (Doc. 8, ¶¶ 12, 14.) PAR handles all aspects of constructing and maintaining power lines in and around the Kansas City metropolitan area. (*Id.*, ¶ 13.)

---

[1] All page numbers cited herein are those generated by the Court's CM/ECF system.

Local 53 is a labor organization that serves approximately 2,500 outside construction line workers in the Kansas City metropolitan area. (*Id.*, ¶ 15.) In the Kansas City area, all PAR construction line workers are also members of Local 53. (*Id.*, ¶ 16.) Additionally, Local 53's executive board is comprised of PAR employees and managers. (*Id.*, ¶ 17.)

During the relevant time period, Edwards, who is African-American, was a member and apprentice of Local 53. (*Id.*, ¶ 18.) In or around October 2016, Edwards became employed by PAR. (*Id.*) Edwards's primary job duties included repairing and maintaining underground and above-ground power lines belonging to Kansas City Power & Light. (*Id.*, ¶ 19.)

In approximately August 2017, Edwards was preparing for his shift and overheard the phone of Richard Summers ring through his truck speakers. (*Id.*, ¶ 20.) Summers is a PAR supervisor and member of Local 53. (*Id.*, ¶¶ 20-21.) Summers answered the phone and the caller screamed through the speakers "What's up Nigger? What cha doing?" (*Id.*, ¶ 20.) Summers then looked at Edwards and laughed. (*Id.*, ¶ 21.)

Also in August 2017, a large team of electricians including Edwards travelled to Dallas, Texas, in response to hurricane Harvey. (*Id.*, ¶ 22.) When they arrived in Dallas, a group of electricians, including Edwards, huddled around the caravan and began drinking beer. (*Id.*, ¶ 23.) Edwards immediately became the center of attention when his co-workers, supervisors, and managers made jokes and comments about his race and color of his skin. (*Id.*, ¶ 24.)

Approximately four days into the hurricane Harvey job, Kevin Boogar told Edwards during lunch that "the mosquitos love that dark skin, that shit tastes like chocolate I bet." (*Id.*, ¶ 28.) Boogar is a member of Local 53. (*Id.*, ¶ 38.) Edwards's manager/superintendent at PAR, Eric Younghans, was sitting next to Boogar but did not take any action and did not appear to be bothered by the derogatory comment. (*Id.*, ¶ 29.) Younghans also sits on Local 53's executive board. (*Id.*)

Edwards reported race-related issues to a different PAR manager, Jason Stephens. (*Id.*, ¶ 30.) After making the report, Edwards was ostracized by the other electricians. (*Id.*, ¶ 31.) Edwards requested a crew change, but did not receive a change until after he had endured another three weeks of Summers repeatedly using the n-word. (*Id.*, ¶ 32.) Edwards was finally transferred to Florida to work in the aftermath of hurricane Irma. (*Id.*)

Although Edwards was assigned to a different crew, Summers was still responsible for evaluating his work performance during the response to hurricanes Harvey and Irma. (*Id.*, ¶ 33.) Summers gave Edwards an "Unsatisfactory" review for August and September 2017. (*Id.*, ¶ 34.) This was the first time Edwards had received a negative review. (*Id.*) In addition to the negative review, Edwards continued to hear other electricians use the n-word and other racial remarks. (*Id.*, ¶¶ 35-38.)

In or around March 2018, Robert Frazee terminated Edwards's employment at PAR. (*Id.*, ¶ 39.)[2] Frazee also sits on Local 53's executive board. (*Id.*) After his termination from PAR, Edwards alleges that he "has continued to experience discrimination by Local 53 executive officers and members as well as at other places of employment consisting of Local 53 members." (*Id.*, ¶ 44.) The Amended Complaint does not provide any further information about this alleged post-employment discrimination. Edwards also summarily alleges that Local 53 refused to refer him for employment opportunities at Magun Boring and Black and McDonald "because of his race and his opposition to racial discrimination." (*Id.*, ¶ 43.)[3]

---

[2] The Amended Complaint does not specify Frazee's position at PAR. Edwards's suggestions in opposition state that Frazee is a General Foreman. (Doc. 22, pp. 2, 6.)

[3] The Amended Complaint alleges that at an unspecified job, an unidentified Local 53 member gave Edwards a safety signal to reverse a truck when in fact traffic was not clear. (Doc. 8, ¶ 40.) A collision nearly occurred as unidentified members of Local 53 watched and laughed at Edwards. (*Id.*, ¶ 41.) In addition to not providing names, location, or any other information about this incident, the Amended Complaint does not allege it was based on race or any other unlawful reason.

On January 11, 2019, Edwards filed this lawsuit against PAR and Local 53. The Amended Complaint asserts the following causes of action against both Defendants: (1) race discrimination in violation of the Missouri Human Rights Act ("MHRA"), Title VII, and 42 U.S.C. § 1981 (Counts I, IV, VII); (2) retaliation in violation of the MHRA, Title VII, and § 1981 (Counts II, V, and VIII); and (3) hostile work environment in violation of the MHRA, Title VII, and § 1981 (Counts III, VI, and IX). PAR filed an Answer, and Local 53 filed the pending motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Local 53 primarily argues that any discrimination occurred at PAR, and that the Amended Complaint does not adequately allege that Local 53, as an organization, engaged in actionable conduct. Edwards contends that each claim is adequately stated against Local 53. The parties' arguments are addressed below.

## II. DISCUSSION

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008). In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained that:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 678 (quotations and citations omitted). In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### A. Counts I, IV, and VII—Race Discrimination

Counts I, IV, and VII assert race discrimination claims against Local 53 under Title VII, § 1981, and the MHRA. Title VII applies to labor organizations, and makes it unlawful:

> (1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race . . .;
>
> (2) to . . . refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race . . . ; or
>
> (3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

42 U.S.C. § 2000e-2(c)(1)-(3).

The elements of a discrimination claim under Title VII, § 1981,[4] and the MHRA are similar. *Id.*; *Saulsberry v. St. Mary's Univ. of Minn.*, 318 F.3d 862, 866 (8th Cir. 2003); Mo. Rev. Stat. § 213.055.1.(2). Absent direct evidence of discrimination, a plaintiff generally bears an initial prima facie burden of "showing that []he (1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) can provide facts that give rise to an inference of unlawful discrimination on the basis of a protected class status." *Blackwell v. Alliant Techsystems, Inc.*, 822 F.3d 431, 435 (8th Cir. 2016) (quotations and ellipsis omitted);[5] *see also Stone v. McGraw*

---

[4] In relevant part, § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens[.]" 42 U.S.C. § 1981(a). A § 1981 plaintiff must therefore also identify an "impaired contractual relationship." *Gregory v. Dillard's Inc.*, 565 F.3d 464, 468 (8th Cir. en banc 2009). Edwards has alleged a contractual relationship with Local 53 (Doc. 8, ¶ 90), and Local 53 does not move to dismiss on this basis.

[5] Neither party argues that Edwards pled direct evidence of discrimination or that the outcome of the pending motion depends on the distinction between direct or circumstantial evidence.

*Hill Fin., Inc.*, 856 F.3d 1168, 1173 n.4 (8th Cir. 2017) ("Because Stone relies on circumstantial evidence of discrimination, the district court correctly assessed his 42 U.S.C. § 1981 claim under the same standard as his Title VII claim[.]"); *Bram v. AT&T Mobility Servs., LLC*, 564 S.W.3d 787, 796 (Mo. Ct. App. 2018).

Construed in a light most favorable to Edwards, the Amended Complaint contains four possible discrimination theories against Local 53. As explained below, none of these theories adequately state a claim against Local 53.

### 1. "Failure to Refer" Employment Opportunities and Post-PAR Discrimination

In his suggestions in opposition, Edwards primarily argues that Local 53 discriminated against him by "failing to refer" him employment opportunities. (Doc. 22, p. 1-5.) The Amended Complaint alleges that: (1) Edwards is African-American, (2) he was "available for employment opportunities with Magun Boring and Black and McDonald," and (3) Local 53 "failed to refer" him these employment opportunities "because of his race and his opposition to racial discrimination." (Doc. 8, ¶¶ 42-43.) Edwards also summarily alleges that after his termination from PAR, he "has continued to experience discrimination by Local 53 executive officers and members as well as at other places of employment consisting of Local 53 members." (*Id.*, ¶ 44.)

These conclusory allegations, found in paragraphs 42-44 of the Amended Complaint, do not state a discrimination claim against Local 53. First, Edwards's conclusory "failure to refer" allegation is not accompanied by facts that would "nudge his claims of invidious discrimination across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (cleaned up). The Amended Complaint does not, for example, identify the individual(s) at Local 53 with authority to refer, allege facts that plausibly show those individual(s) did not refer Edwards for a discriminatory (as opposed to nondiscriminatory) reason, or allege facts that show Edwards was qualified for and

6

otherwise entitled to the positions. *Id.*; *see also Evans v. Blanton Constr. Co.*, 2018 WL 3375092, at * 6 (E.D. Mo. July 11, 2018) (finding that the plaintiff "failed to state a claim because he has failed to allege any specific facts about the Union or its agents that would plausibly suggest that their alleged failure to place him in jobs, or their other actions, were caused by his membership in a protected class or by his having participated in any protected activity").[6]

Second, the allegation that Edwards "has continued to experience discrimination by Local 53 executive officers and members as well as at other places of employment consisting of Local 53 members" also lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. The Amended Complaint does not provide any facts in support, including the individuals involved, the nature of the discriminatory acts, or where the discrimination took place. Additionally, as explained throughout, the Amended Complaint does not adequately allege that Local 53—as an organization—engaged in any discriminatory conduct.

## 2. Failure to Remedy Racial Discrimination at PAR

The second theory is that Local 53 knew of, but failed, to remedy the racial discrimination Edwards was subjected to during his employment at PAR. (Doc. 8, ¶¶ 46-48.) This theory is foreclosed by *Thorn v. Amalgamated Transit Union*, 305 F.3d 826 (8th Cir. 2002). In *Thorn*, the plaintiff was employed by Metro Transit as a bus driver and was also a member of a union. *Id.* at 829. The plaintiff complained to a union steward of ongoing and unwelcome sexual advances by her co-workers, who were also members of the union. *Id.* The plaintiff ultimately filed a Title VII claim against the union for sexual harassment. She alleged that "despite knowledge of the sexual harassment of the Plaintiff by union members, the Union[] failed to take timely and appropriate

---

[6] In addition, Edwards's surreply brief acknowledges that "he has not fully exhausted the allegations of Local 53 failing to refer him for employment opportunities." (Doc. 27, p. 1.) Consequently, any "failure to refer" claim under Title VII or the MHRA is also dismissed for failure to exhaust. *Stuart v. General Motors Corp.*, 217 F.3d 621, 630 (8th Cir. 2000) (recognizing that administrative exhaustion is required before filing a Title VII or MHRA claim).

7

remedial action." *Id.* at 833 (cleaned up). The district court dismissed this claim, and the Eighth Circuit affirmed. *Id.* at 832-33.

*Thorn* explained that although the union was "prohibited from causing or assisting unlawful discrimination by Thorn's employer, nowhere in either statute do we find language imposing upon unions an affirmative duty to investigate and take steps to remedy employer discrimination." *Id.* at 832.[7] The court further explained that "imposing such a duty would place unions in an untenable position whenever one member accused another member of causing the employer to discriminate." *Id.* at 833. The plaintiff thus could not state a claim based on "alleged non-actionable passive acquiescence" by the union. *Id.*

Here, Edwards has failed to adequately allege that Local 53 itself (as opposed to individual members) even had knowledge of racial discrimination at PAR. Even if Local 53 did have knowledge, it had no obligation to "investigate and take steps to remedy employer discrimination." *Thorn*, 305 F.3d at 832. At most, Edwards has alleged "passive acquiescence" by Local 53 instead of the requisite "active participation." *Id.* at 832-33; *EEOC v. Pipefitters Ass'n Local Union 597*, 334 F.3d 656, 659 (7th Cir. 2003) ("Since the employer is both fully liable for failing to take effective measures against coworker harassment and far better positioned to apply such measures, what is to be gained, except litigation clutter, by imposing the same liability on the union?").

### 3. All PAR Employees are Also Members of Local 53

The third theory is that Local 53 is liable for the discrimination Edwards endured during his employment at PAR because all PAR employees are also Local 53 members and/or sit on Local 53's executive board. (Doc. 8, ¶¶ 16-17, 21, 29-30, 39; Doc. 22, pp. 5-7.) This theory is rejected under *Eliserio v. United Steelworkers of Am. Local 310*, 398 F.3d 1071 (8th Cir. 2005). In *Eliserio*,

---

[7] The statutes at issue were Title VII and the Minnesota Human Rights Act. *Id.* at 832.

8

the plaintiff saw racially-harassing graffiti at his employer's worksite. *Id.* at 1075. The plaintiff brought a hostile-work environment claim against the union and argued "the graffiti was almost certainly created by union members because approximately 11,950 of 12,000 employees at the Des Moines plant are union members, some of whom held a grudge against" him. *Id.* at 1077.

Applying *Thorn*, *Eliserio* recognized that a union could be liable under Title VII if it "*itself* instigated or actively supported the discriminatory acts." *Id.* (quoting *Thorn*, 305 F.3d at 832-33) (emphasis in original). As a result, *Eliserio* held the union was not liable simply because some of its members created the graffiti. *Id.* Instead, the plaintiff was required—but failed—to show that the union "*as an organization*, instigated or actively supported the racially harassing graffiti." *Id.* (citations and quotations omitted) (emphasis supplied);[8] *see also Webb v. International Brotherhood of Electrical Workers*, 2005 WL 2373869, at * 6 (E.D. Pa. Sept. 23, 2005) ("[W]hile Webb has alleged that *members* of Local 654 engaged in the allegedly discriminatory acts while working for his employers, he has not shown the existence of facts demonstrating that Local 654 *itself* instigated or actively supported the discriminatory acts.") (emphasis in original).

Similarly, a fair reading of the Amended Complaint shows that any discrimination occurred by PAR employees while working for PAR. Even assuming this discrimination occurred, Edwards does not have a cause of action against Local 53. *Eliserio*, 398 F.3d at 1077. Edwards was required, but failed, to plead that Local 53, "*as an organization*, instigated or actively supported" the discrimination at PAR. *Id.* (emphasis supplied). Simply because some of the PAR employees were also members of Local 53 does not, by itself, state a claim against Local 53. *Id.*; *Jacobs v.*

---

[8] *Eliserio* did find the union could be liable for a hostile work environment based on "no rat" stickers that were purchased after the plaintiff had complained of racial discrimination. *Eliserio*, 398 F.3d at 1077-78. This was because a union official (in his capacity as such) caused the union to purchase and distribute the stickers. *Id.* at 1075, 1077-78. In contrast, the Amended Complaint does not allege that a union member or executive board member—acting in their capacity as such—discriminated against Edwards.

9

*United Steelworkers of Am.*, 51 Fed. App'x 184, 185 (8th Cir. 2002) ("Jacobs raises many concerns about his employer's actions, but we cannot say Jacobs suffered discrimination or retaliation at the hands of the [union]."). Edwards fails, for example, to allege that a Local 53 member or executive board member discriminated against him in their capacity as a union official. *Compare Eliserio*, 398 F.3d at 1077 (noting that an individual "in his capacity as a union official" purchased and distributed "No Rat" stickers).[9]

### 4. **Employer/Joint Employer Theory**

The final theory is that Local 53 is an employer and/or a joint employer with PAR. (Doc. 8, ¶¶ 5, 45, 51-52.) Edwards summarily alleges that Local 53 "is an employer." (*Id.*, ¶ 5.) However, the Amended Complaint does not contain facts that plausibly support this assertion, including that Local 53 had the power to hire or fire him, or had power over any of the terms of his employment. *Iqbal*, 556 U.S. at 678. The joint employer theory is also not well-pled. To determine whether entities are joint employers, courts generally consider four factors: "(1) interrelation of operations, (2) common management, (3) centralized control of labor relations[,] and (4) common ownership or financial control." *Ma. v. Missouri State Univ.*, 2014 WL 11512555, at * 4 (W.D. Mo. Sept. 3, 2014) (quoting *Baker v. Stuart Broad. Co.*, 560 F.2d 389, 392 (8th Cir. 1977)).

Edwards focuses on the fact that PAR and Local 53 have common management and members, (Doc. 22, p. 5-6), but that is only one consideration and not enough to state a claim

---

[9] Edwards alleges that Frazee, a PAR employee and Local 53 executive member, fired him from PAR. (Doc. 8, ¶ 39.) He does not allege that Frazee knew of or otherwise engaged in discriminatory acts. Edwards also alleges that Younghans, a PAR employee and Local 53 executive member, "appeared unbothered by the race-related comments" made to Edwards during their employment at PAR. (*Id.*, ¶¶ 29-30.) Based on these allegations, Edwards argues that these two executive board members "have apparent and actual authority to bind" Local 53. (Doc. 22, p. 6.) But as discussed throughout, these allegations show that Frazee and Younghans were acting in their capacity as PAR employees. The Amended Complaint does not allege that either individual was acting in their capacity as an executive member of Local 53, or that Local 53 would be bound by those acts.

against Local 53. *See Eliserio*, 398 F.3d at 1077; *Thorn*, 305 F.3d at 832-33. The other factors weigh against a joint employer theory. Other than common membership/management, Edwards does not allege that Local 53 and PAR had interrelated operations, such as interrelated payroll and insurance, that they shared office space or equipment, or had a common function or purpose. *Ma*, 2014 WL 11512555, at * 4. Edwards does not allege any facts showing centralized "control of labor relations, such as policies, schedules, and salaries as well as hiring and firing decisions." *Id.* at * 5. Edwards also does not allege that the two entities have common ownership or financial control.

For these reasons, Edwards has not plausibly stated a discrimination claim against Local 53 under Title VII, § 1981, or the MHRA.

### B.  Counts II, V, and VIII—Retaliation

Counts II, V, and VIII assert retaliation claims against Local 53 under Title VII, § 1981, and the MHRA. Under Title VII, a labor organization cannot "discriminate against any member thereof . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To prevail on a retaliation claim under Title VII and § 1981, a plaintiff must adequately show that "(1) []he engaged in protected activity; (2) []he suffered a materially adverse employment action; and (3) the materially adverse action was causally connected to [plaintiff's] protected activity." *Wright v. St. Vincent Health Sys.*, 730 F.3d 732, 737 (8th Cir. 2013). A retaliation claim under the MHRA contains similar elements. Mo. Rev. Stat. § 213.070.1(2); *Mignone v. Mo. Dep't of Corr.*, 546 S.W.3d 23, 37 (Mo. Ct. App. 2018).

11

The retaliation claims fail for the same reasons as the discrimination claims. Edwards alleges that Local 53 retaliated by "failing to refer" him employment opportunities, but those allegations are conclusory and not adequately pled. *Iqbal*, 556 U.S. at 680.[10] Specifically, Edwards does not identify the individual(s) with authority to refer, does not allege he was qualified and otherwise entitled to the referral, and does not plausibly show that the "failure to refer" was connected to a protected activity (as opposed to a nondiscriminatory reason). The other retaliatory conduct that Edwards relies upon, including his negative evaluation at PAR and termination from PAR, relate to his PAR employment and not to Local 53.

Consequently, Edwards has failed to plausibly state a retaliation claim against Local 53 under Title VII, § 1981, or the MHRA.

### C. Counts III, VI, and IX—Hostile Work Environment

Counts III, VI, and IX assert hostile work environment claims under Title VII, § 1981, and the MHRA. "Title VII and § 1981 claims alleging a hostile work environment are analyzed under an identical standard." *Eliserio*, 398 F.3d at 1076. To establish such a claim under Title VII or § 1981, a plaintiff must show that: "(1) he or she is a member of a protected group; (2) he or she is subjected to unwelcome race-based harassment; (3) the harassment was because of membership in the protected group; and (4) the harassment affected a term, condition, or privilege of his or her employment." *Stone*, 856 F.3d at 1175 (quotations omitted); *Ellis v. Houston*, 742 F.3d 307, 319 (8th Cir. 2014). A plaintiff "must show both that the offending conduct created an objectively hostile work environment and that he subjectively perceived the work environment to be hostile."

---

[10] Edwards's charge of discrimination checked the "retaliation" box but it does not contain any reference to a "failure to refer." (Doc. 23-1, p. 1.) As a result, any retaliation claim under Title VII and the MHRA based on the "failure to refer" is also dismissed for failure to exhaust.

*Eliserio*, 398 F.3d at 1076. A hostile work environment claim under the MHRA contains similar elements. *Bram*, 564 S.W.3d at 797-98.

As discussed above, Edwards has failed to adequately allege that Local 53 subjected him to race-based harassment. In addition, Edwards does not allege any conduct by Local 53 that affected the terms, conditions, or privileges of his membership in the union. For example, he does not allege that Local 53 refused to file a grievance on his behalf, and the "failure to refer" allegations are inadequately pled and not exhausted. A hostile work environment may have existed at PAR, but Edwards has not adequately stated that Local 53 instigated or actively supported it. *Thorn*, 305 F.3d at 832-33; *compare Dowd v. United Steelworkers of Am., Local No. 286*, 253 F.3d 1093, 1103 (8th Cir. 2001) (finding that union could be liable for hostile work environment, in part, because "the harassment was directly connected to a union-sponsored activity—the strike").

Edwards also summarily alleges that "Local 53 is liable for the hostile work environment created by its members because executive officers either ratified or approved the conduct or gave the discriminatory behavior a 'rubber stamp' under the cat paw's theory." (Doc. 8, ¶ 52.) This cursory allegation does not state a claim. First, it fails to specify whether the executive officers involved were Frazee, Younghans, or someone else, that those unspecified executive officers were acting in their capacity as such, or "the conduct" they allegedly had authority to ratify or approve.

Second, "[i]n a cat's paw case, an employer may be vicariously liable for an adverse employment action if one of its agents—other than the ultimate decision maker—is motivated by discriminatory animus and intentionally and proximately causes the action." *Bennett v. Riceland Foods, Inc.*, 721 F.3d 546, 551 (8th Cir. 2013). "This theory requires that there be a person possessing both (1) the necessary animus and (2) influence, leverage or control over the decisionmaker, such that it could be said the decisionmaker was acting at the person's bidding."

*Edwards v. Lynch*, 111 F. Supp. 3d 989, 1003 (W.D. Mo. 2015). As stated, the Amended Complaint fails to specify the Local 53 individual(s) involved or the conduct that would support this theory. Moreover, to the extent Edwards relies on a hostile work environment at PAR[11] (or at any other employer), he has not adequately alleged that anyone at Local 53 had sufficient influence, leverage, or control over that employer. *Id.*

Consequently, Edwards has failed to plausibly state a hostile work environment claim against Local 53 under Title VII, § 1981, or the MHRA.

### III. CONCLUSION

To be clear, this Order does not suggest that Edwards failed to adequately allege that he encountered discrimination, retaliation, and/or a hostile work environment at PAR. He has, however, failed to adequately allege that Local 53 engaged in such conduct. Therefore, and for the reasons stated herein, Local 53's Motion to Dismiss (Doc. 11) is GRANTED.

IT IS SO ORDERED.

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
DATE: July 1, 2019        UNITED STATES DISTRICT COURT

---

[11] Although not specified in the Amended Complaint, Edwards's suggestions in opposition argues that Local 53 is liable for the discrimination of Summers and Boogar under the cat's paw theory and/or that Local 31 approved and ratified their conduct. (Doc. 22, p. 7.)